Our next case is Saha Thai Steel Pipe Public Company versus the United States in Wheatland, Tuba, 2022-2181. Mr. Cloutier. Cloutier, sir. Good morning, Your Honors. I am Chris Cloutier, here on behalf of Wheatland Tuba. If I may just start by summarizing what I believe my opposing counsel's argument to be is that a circular welded pipe certified as complying with the industrial specification for standard pipe can never be referred to as standard pipe if it also meets a second industrial specification. Twenty-five years ago, in a case involving my client, titled Wheatland Tube, the court considered a very similar issue. And that case turned on a scope published by the Department of Commerce that read, and I quote, standard pipe that is dual or triple certified slash stencil. So it's our position that a piece of pipe certified as being standard pipe remains standard pipe no matter what else might happen to it. The scope at issue here, for example, contains no exclusions for any further processing. Is there any affirmative evidence in the record that suggests that dual stenciled pipe is commonly referred to as standard pipe? The record evidence would be the definitions of scope from earlier cases that referred to it as standard pipe. Right. But just because, of course, dual stenciled pipe has a standard pipe certification, maybe that's a separate question from whether dual stenciled pipe is commonly referred to in the industry as stenciled pipe, I mean, as standard pipe. You know, for example, if my kid has both a brown belt and a black belt in karate, nobody's calling my kid a brown belt. They're calling him a black belt. So, you know, how does it work in this industry? What do people in this industry commonly refer to double stenciled pipe as? I think, frankly, there's not that much dual stenciled pipe out there, but when they do see it, you may refer to it as either standard or line pipe. And in this case, what I think is important, as the court held in Shenyang, Yuanda, is that the standard pipe is indistinguishable from dual stenciled pipe. The specification for standard pipe has a tolerance of plus or minus 10% on the wall. So if the standard says for this size pipe it's got to be 10 millimeters, you can roll it to 9 millimeters or roll it to 11 millimeters, and it still meets the specification. The standard for line pipe requires a little bit thicker wall. So what we're talking about here is really a standard pipe that's rolled a little thicker than it might be otherwise, but it's still within the tolerance for standard pipe, and can be sold as standard pipe and used as standard pipe. Does that still fall within the physical description in the order? I'm sorry? Does that still fall within the description, the physical description? Absolutely, sir. It's standard pipe. It's within the tolerances for ASTM 853, and therefore it qualifies as standard pipe. So would you say that all pipe, regardless of name, and meets that physical description, that that pipe falls within each scope of the order? If it's referred to, if it can be referred to as standard pipe, yes, but if it's commonly referred to in the industry as standard pipe, which it was in the petition. Do they have any declarations in the record like, hey, I'm a member of the industry, and I know what the industry says about double stenciled pipe, and double stenciled pipe in our industry is commonly referred to as standard pipe. Anything like that? The answer is, the only record I can refer you to is the scopes from the three cases where they specifically refer to standard pipe that is dual or triple stenciled. And those were filed by, you know, half a dozen domestic industry participants who all spend all of their day making steel pipes. Once you reach at that point where you're discussing commonly referred to and that language, are you in the K-1 factors area? I don't think you have to, but it seems that the Department of Commerce did. I follow the logic in OMG that once you read the scope, and if you know what that means, then you can just stop. Here reading the scope, there's no exclusion for dual stenciled pipe. The CIT opinion at one point made an observation that the Federal Circuit has two lines of authority here on scope of order inquiries. Maybe one is OMG that you call that, another one is Meridian. Do you agree that there's two different lines of authority going on here? Your Honor, I think that the Federal Circuit has said different things at different times, but they're not really inconsistent, and neither one is wrong. I just, I believe that the logic expressed in OMG speaks to me, because if you read the scope and at the end you know what the scope covers, I don't see why it's important to go into anything else. But there was a case on lawn pipe that was withdrawn, right? That's correct, Your Honor. So the ITC didn't review it? The ITC reviewed all pipe imported from Thailand that met the physical description of the products that issue here. The reason that the case was withdrawn with respect to line pipe was at the time no one in Thailand possessed the API license necessary to manufacture line pipe. So there were no injuries. But doesn't that inform what the scope of the order was? Because the order was confined to things that excluded line pipe, and at the time apparently the tariff numbers for line pipe included dual stencil pipe. Your Honor, that is a consequence of the general rule of interpretation number three by the World Customs Organization that says when one imported product is simultaneously two things, you should classify it as the more specific tariff classification. In this case, line pipe appears much higher on the page, and it says conforming to the API license, and then standard pipe is actually imported under a bunch of classifications at the bottom of the page under other, other, other. So the fact that it's classified as line pipe is really of no moment. It's still standard pipe. Do you have anything further? No, Your Honor. Thank you. Well, you can save eight minutes for the body if you need it. Mr. Dirling. May it please the Court, I'm James Dirling here today for Sahatai the Abali. Let me jump to the question, is there any record evidence that dual stencil pipe is considered standard pipe? And the answer is an emphatic no, and the reason we know this with such clarity is during the trade court proceedings, Judge Baden specifically posed that precise question and sent both the government and Wheatland Tube back searching. He basically said, can you find me any evidence at all in the 25, 30 year history of the order on Thailand, any order specific evidence that ever referred to dual stencil pipe as standard pipe, and they came back with nothing. They found some examples from other orders, which Judge Baden discussed in his decision on the fact that when specifically directed to look for that precise evidence, there was none. And as Judge Baden put it, that fact spoke very, very loudly. The second point I'd like to make is that the main argument that Wheatland Tube is making is that somehow the physical description here is clear, and therefore you don't need to get to any of the factors. You don't need to look at the broader historical circumstances. Just look at the 50-odd words on a piece of paper, and you're done. Well, with all due respect, that focus on the physical description alone is fatally flawed for two reasons. The short paragraph on its own also includes the language known as standard pipe, which has to be given some meaning. And as Judge Baden carefully walked through, he basically said, well, what does standard pipe mean? What does the record show standard pipe means? And he reviewed it and said, well, this doesn't really answer the question, right? A reference to standard pipe alone doesn't really answer the question. Thus, there's ambiguity. And Judge Baden also correctly noted that we have certain tariff numbers included in the scope, but interestingly, the tariff numbers that would have included dual stenciled, put aside the reason why or why not, but as a factual matter, and again, undisputed fact, because Judge Baden specifically asked the parties during his proceeding, do you all agree that if dual stenciled pipe were coming in, it would be under these tariff numbers? Everyone agreed. No dispute on that fact. So on its face, the scope language uses a term standard pipe, which isn't self-evident. And second, it excluded the specific tariff numbers that would have included dual stenciled. And Judge Baden, in our view, correctly said, this is ambiguous. We cannot resolve this question on the four corners of the scope language. Thus, he went through the K-1 factors. He went through the K-1 factors that we... Did he go through the two of the K-1 factors on the basis that there was further confusion or ambiguity in the order? He basically very thoroughly discussed the two lines of decisions in this court. He went through K-1 factors after he made a decision with respect to the scope of the order. Yes, he made a decision that in his view, the language on its face was not clear. He basically said whether he had applied the line of this court's cases that says language alone... And he said it's not clear because of the terminology, the commonly referred to... He said it's not clear for two reasons. The first reason was the use of the language known as standard pipe, because he properly asked himself, well, what is standard pipe? He went to the definition of standard pipe and found that it didn't answer the question. It dealt with issues more than just the physical dimensions of the product, but then he also took specific note of the... What did he go to for the definition? Is the ASTM definition... The Standard Setting Organization, MC? Yes. So he found ambiguity. He went to the K-1 factors, and the K-1 factors, when he went through them... Would you agree that if there's a contradiction between, let's say, a tariff heading that's set out within the order and the physical description of the subject merchandise that was investigated is now part of the order, which would trump in that situation? No, it is clear, Your Honor, that... I'm asking you, which one would trump? No. The language of the order takes precedence over the tariff classification. That was our law. That was for those circuit jurors students back during the sub reviews. Yes, Your Honor, that's always been the case. And it continues to be our jurisprudence, correct? Yes, correct, Your Honor. But there's an important difference that I would emphasize between finding the tariff code to be dispositive. The tariff code cannot supersede the language of the scope. If the scope language is clear on its face, the tariff codes can't supersede that. But that doesn't mean that the tariff codes are not part of the scope and are relevant. Our point is simply that the tariff code is relevant. Even the order tells us that the tariff codes are included for the convenience of customs. Yes, Your Honor. The tariff codes, under our case law, the use of tariff classifications or the codes within the scope order, they don't have much meaning, do they? I would disagree with that, Your Honor, because the reason they're included is not just for the convenience of the party, but that is also part of the scope language. No, but they're included for customs purposes. That's not the general public. No, Your Honor. It's also for purposes of understanding the scope language because, for example... What does it say in this scope over here? No, but for example, Your Honor... Excuse me. Doesn't it say that they're there for the convenience of customs? That language is included in the 1989 scope language that was rewritten. That language was not included in the 1986 scope language. You've been around full authority. You've seen a lot of scope orders. Yes. And they include HTS numbers. Yes. And they also include the language that says these are not dispositive, that these are included merely for the convenience, not even the authority, but the convenience of customs. Isn't that... I guess, Your Honor, I disagree with the premise that the inclusion has no meaning, that it's not purely for the convenience of the party. It's also part of the language. And this case is a great example, Your Honor, of why it actually does have meaning. Not dispositive. I agree that the law of this circuit has always been, it's not dispositive. But something can be relevant without being dispositive, and this case is a perfect example. Because the key point here is not the tariff numbers that were included, but rather the tariff numbers that were left out. What does that say about the meaning of the scope? At a minimum, the combination of known as standard pipe and the exclusion of the tariff numbers that would have included dual stencil pipe, at a minimum, that creates ambiguity. Once we get ambiguity, we turn to the K1 factors, and that's where the missing tariff numbers become important. I wanted to ask you precisely this. When is it proper for this court to turn to the K1 factors? At any time, or only when there's an ambiguity that's discovered? Well, Your Honor, our view is that the line of decision... And also, what was the regulation at the time that... So, two answers, Your Honor, because it's a two-part question. Our view is the line of this K1 factors can sometimes help establish whether the language is, in fact, clear or not. We think that's the better line of cases, that we think to put on blinders and not consider the K1 factors at all is not the preferred rule. So we think the other line of cases is more appropriate. On the specific question about the regulation in effect at the time, at the time of this particular decision, the commerce regulation required commerce to consider the K1 factors. Again, not as superseding the language of the scope, but rather the K1 factors were relevant as part of understanding what is the meaning of the scope. And so, properly considered. At the end of the day, the court will... Do we have the authority to change the words of the order? No, it's clear, Your Honor, that you don't have the authority to change the... You can't rewrite the scope. The scope is the scope. Your job is to interpret what the scope includes or doesn't... Let me ask you this other question. You're arguing that certain merchandise does not fit or fall within the scope of the order. Yes. And yet, the order itself has no exclusion in it. Your Honor, the order... In order for me to say that there's an exclusion or should be, I have to create some sort of an implied exclusion. And to do that, I have to have some sort of an implied inclusion. But, Your Honor, I guess I wouldn't... Do you see where I'm headed? No, I understand. Do you agree with that so far? Not really, Your Honor, because in our view, the absence of an express exclusion doesn't mean that the scope language can be read so broadly as to include things that are clearly not within the scope. And I say clearly not within the scope for a couple of reasons. The first is the missing tariff numbers, while not dispositive, it's a clue. And once you get beyond the language and the missing tariff numbers in the language, consideration of the K1 factors resolves the is that the line pipe and dual stencil pipe was originally included, but then was expressly excluded by petitioners during the original proceeding. So it was included and it was taken out. And in light of that decision, we have an International Trade Commission decision about injury that for Thailand only talked about standard pipe. It excluded any reference to line pipe or pipe that would have been both line and standard. You're talking about the safeguards decision? Not the safeguards decision, Your Honor. The original ITC determination in 1986 in connection with this particular order. So what do we do with what appears to me to be extremely important facts here? And that is that the product that you're seeking to have excluded has the same physical description that's expressed in the order. And second, there is no exclusion for the pipe that you're talking about. Your Honor. Why is that not dispositive? The product that we believe is not properly included within the scope is product that is not known as standard pipe. You're not answering my question. I didn't reference to anything as how it's known. We're talking about the same physical description. Your Honor, the simplest way to appreciate that is the physical description that appellant relies upon would also include line pipe. Line pipe also has the same physical dimensions. The physical dimensions in this particular scope language are really very, very basic. It would include any kind of circular pipe regardless of the metal. Line pipe has very different metal in it, different steel than standard pipe. One of the core differences, one of the main reasons why a product qualifies. Does line pipe come in the physical dimensions? Absolutely, Your Honor. Absolutely. And you can see that in the original ITC determination. What would be the confusion then? If you're at customs and you get, one day you get a standard pipe, you look it up and it meets a physical description of the order. Next day you get what, well, I don't know what it is, it looks like a line pipe. You look and it meets a physical description of the order. But Your Honor. What's the problem here? When a person enters the product into the U.S., they have to sign a tariff code. There are specific tariff codes for line pipe and there are specific tariff codes for dual stenciled and they are separate from the tariff codes for rules and regulations. They're not intentionally engaging in misrepresentation. In this case, we have a situation where the product coming in is physically different than standard pipe. It may have the same outer dimensions, but it's physically different in that it is using higher grades of steel and it is thus qualifying to be certified and stenciled as dual stenciled, line and standard pipe. I would just like to close with the analogy we used in the brief, a two-quart measuring cup versus a one-quart measuring cup. But I like the analogy of brown belt and black belt. No one would refer to someone holding a black belt as basically being a brown belt. It doesn't make sense, even though a black belt necessarily includes the brown belt. And that's what we have here, Your Honor. We have a product that is different, different steel, different certification requirements. It happens to function and fit within the kind of broad physical size described in the order. But that's why the language of the order known as standard pipe is so important. That's why there's ambiguity. That's why we get to the K1 factors. And that's with all due respect, we would urge the court to affirm Judge Baden's very thoughtful decision going through all of these issues. Thank you, Your Honors. Thank you, counsel. Mr. Cotillier, you have some time? Thank you. I do have some time. I'm not going to use all of it. But just in general, I'd like to dispute that the product is somehow physically different. I think there's evidence that it's exactly the same. In particular, in the appendix, it said 40283 counsel for Korean interests testified in the context of an order that actually did have an exclusion for dual stencil pipe, that 70 to 80% of the pipe that his clients were importing were used as standard pipe. And that just looking at them, you can't tell what's what. Does this Thailand order encompass line pipe? It does not. Does line pipe meet these physical descriptions? Line pipe can. And if line pipe is stenciled only as line pipe, you know, we did try that, but we are no longer arguing that it's only this line pipe have an outside diameter of 0.375 inches or more, but not exceeding 16 inches of any wall thickness. So line pipe meets all of those descriptions, right? There are some requirements for wall thickness that may be a little bit different, but those would not be dual stencil pipe. Right. Here it says of any wall thickness in the order. I haven't read the API 5L in a while, but I do believe there are some restrictions on wall thicknesses. Nothing further. Thank you very much. Appreciate the arguments, the cases submitted.